UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| NATIONWIDE PROPERTY & CASUALTY INS. CO., as subrogee of JOSEPH AND BRITAIN PAQUETTE<br><br>Plaintiffs,<br><br>v.<br><br>A+ CHIMNEY SERVICE, LLC,<br><br>Defendant. | Case No. 5:16-cv-00069-gwc |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DEFENDANT'S EXPERTS**

Defendant A+ Chimney Service, LLC ("A+ Chimney"), by and through its attorneys Downs Rachlin Martin PLLC, hereby opposes Plaintiff's motion to exclude Defendant's experts.[1] Plaintiff moves to exclude A+ Chimney's liability expert, Tim Morse, on grounds that he is not qualified, his methods are unreliable, and that his opinions do not fit the circumstances of this case. Although Plaintiff is not an expert, it uses its own self-serving and scientifically unsupported hypotheses to support its argument that Dr. Morse's opinions are unreliable. Plaintiff alleges in support of its motion to exclude Dr. Morse that it has "physical evidence that the cap was apart from the Tee in the fire" this assertion is unsupported by qualified, reliable expert testimony. Pl.'s Motion to Preclude Def.'s Experts, at p. 13, fn. 9, Doc. 35, p. 13; *see generally* Def.'s Motion *In Limine* to Exclude Testimony of William Minogue and Paul Moody, Doc. 33. Plaintiff also seeks to exclude both of A+ Chimney's damages experts, Thomas Hirchak and Mark Lareau, on grounds that their testimony is unreliable and does not fit the

---

[1] A+ Chimney filed a motion to strike Plaintiff's motion on the grounds that it 51-pages over the page limit requirement. As the motion to strike has yet to be ruled on and the deadline to file an opposition is approaching, A+ Chimney submits this opposition.

evidence. Although Plaintiff is not a professional property appraiser and provides no expert basis for the statement, Plaintiff argues that Mr. Lareau failed to assign a value to two 'important' selling features of the homeowners' home pre-fire. The decision to include or exclude certain features is well within Mr. Lareau's expert discretion and supported by his vast experience as a professional appraiser. Plaintiff further argues that the post-fire appraisal is unreliable because he assigned a conservative value to the intact foundation; an assessment that actually increases Plaintiff's potential claim for damages. Mr. Lareau clearly explains the assumptions he made and his basis for the decision to assign a specific value to the foundation. Finally, Plaintiff seeks to exclude A+ Chimney's rebuttal expert. Plaintiff misconstrues the purpose of Mr. Hirchak's testimony. Mr. Hirchak will testify only if Mr. Gomez is permitted to testify regarding the "actual cash value" of the homeowners' personal property. He will testify that there is no reliable method to value the homeowners' personal property based on the information Mr. Gomez was provided.

In further opposition to Plaintiff's Motion, A+ Chimney submits the following memorandum of law.

## MEMORANDUM OF LAW

I. STANDARD OF REVIEW

"Rule 702 governs the admissibility of expert testimony. The essence of this rule is that expert testimony must 'rest on a reliable foundation' and be 'relevant to the task at hand.' *Amorgianos v. National Railroad Passenger Corp.*, 303 F.3d 256, 265 (2d Cir.2002) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993))." *Moffit v. Icynene, Inc.*, 407 F. Supp. 2d 591, 606 (D. Vt. 2005).

> The Supreme Court emphasized the "liberal thrust" of the Federal Rules of Evidence, favoring admissibility of expert opinion testimony. *Daubert*, 509 U.S.

Downs Rachlin Martin PLLC

2

> at 588.  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. at 596.
>
> Nevertheless, expert testimony should be excluded if it is "speculative or conjectural." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996). Neither *Daubert* nor the Federal Rules of Evidence requires a district court to admit opinion evidence that is "connected to existing data by only the *ipse dixit* of the expert" if the court concludes that "there is simply too great an analytical gap" between the data and the proffered opinion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

*Drake v. Allergan, Inc.*, 2014 U.S. Dist. LEXIS 151830, *4-5, Case No. 2:13-cv-234 (D. Vt. Oct. 23, 2014).

II.   ARGUMENT

   A.   <u>A+ Chimney's Liability Expert Tim Morse</u>

   1. *Dr. Morse Is Exceptionally Qualified To Provide Expert Opinions Regarding The Cause Of The Fire And The Interpretation Of The NFPA 211 As Applied To The Facts Of This Case.*

Plaintiff argues that Dr. Morse lacks the qualifications to testify as an expert on the cause of the house fire and the standard of care for a chimney sweep.  Plaintiffs' argument rests on a district of Pennsylvania case in which the court excluded a witness for not meeting the qualification requirements specific to patent cases.  *See Dorman Prods., Inc. v. PACCAR, Inc.*, No. 13-6383 (E.D. Pa. Aug. 22, 2016).  In this negligence action, there is no requirement that expert be qualified in 'pertinent art.'  Thus, that case is easily distinguishable.  Under the law applicable to this case and this district, if an expert's field or discipline is sufficiently connected to his proffered testimony for it to fall within his area of expertise he meets the qualifications requirement.  *Citibank N.A. v. City of Burlington*, 2013 U.S. Dist. LEXIS 173664, *38, Case No. 2:11-cv-214 (D. Vt. Dec. 10, 2013).  This standard does not require an expert to have done the exact same expert analysis on a prior occasion as Plaintiff would like you to believe is necessary.

Restated another way, the standard only requires the expert's discipline to be sufficiently connected to his testimony.

Dr. Morse's field of expertise is sufficiently connected to determining the standard of care in this case and cause of the fire.  *See* Aff. of Timothy Morse, at ¶¶ 5-11, attached hereto as **Exhibit A**; *see e.g.* Morse Depo. at 37:12-20, Dr. Morse deposition excerpts attached hereto as **Exhibit B**.  Dr. Morse has a Ph. D and M.S. from Cornell University in Mechanical Engineering, is a licensed Professional Mechanical Engineer, is a certified Fire and Explosion Investigator, and is a member of the National Fire Protection Association (NFPA), National Association of Fire Investigators, and American Society of Mechanical Engineers.  CV of Dr. Timothy Morse, attached hereto as **Exhibit C,** at Appendix B.  As a professional engineer and certified fire and explosion investigator he should be deemed sufficiently qualified to testify regarding the cause of the fire and the proper interpretation of fire codes.  Dr. Morse's education "covers multiple engineering principles that are directly relevant to understanding how chimneys work, how fires work, and how chimney fires can occur."  Morse Depo. at 37:17-20.  The NFPA incorporates principles of mechanical engineering, including structural mechanics, thermodynamics, fluid mechanics, and heat transfer, all of which are relevant to an understanding of the performance of a chimney, vent, or flue.  Thus, as a mechanical engineer Dr. Morse is able to read and interpret codes and determine compliance.  Although, Plaintiff's counsel did not question Dr. Morse on his experience interpreting *other* NFPA code provisions, Dr. Morse has been interpreting how the NFPA codes apply to different scenarios throughout the course of his career.  Morse Aff., at ¶ 7.  Additionally, Dr. Morse has experience writing and drafting code provisions, he participated in drafting codes for wind energy standards.  Morse Aff., at ¶ 11.

The standard of care for a chimney sweep and the specific requirements of a Level I inspection are not something within the knowledge of the average layperson or juror. *S. Burlington Sch. Dist. v. Calcagni-Frazier-Zajchowski*, 410 A.2d 1359, 1363 (Vt. 1980) ("A jury is competent to draw logical inferences from facts within their knowledge.  But where, as here, the facts (i.e., the customs of a profession) are outside their knowledge, competent evidence, usually in the form of expert testimony, must be adduced."); *Betz v. Highlands Fuel Delivery, LLC*, 2013 BL 25959, 6 (D. Vt. Jan. 31, 2013) (the standard for refurbishment and recertification of propane tanks is not something within the knowledge of the average layperson).  Dr. Morse provides an expert opinion as to the standard of care required by the NFPA 211.  His opinions are based on his education and training as a mechanical engineer and his experience interpreting code provisions for various clients over the years.  Morse Aff., at ¶ 5-10.

Plaintiff argues that Dr. Morse's standard of care testimony should be excluded because he has no expertise and has not conducted any prior research on the NFPA 211 and interprets it in a self-serving manner.  This argument fails on many levels.  Simply because an interpretation or opinion is 'self-serving' does not render it incorrect.  Under Plaintiff's theory, all retained experts would be excluded from testifying in support of any opinion.  Plaintiff conflates the notion of *ipse dixit*, i.e. an unproven statement, with a proven and reliable yet self-serving statement.

> 2. Dr. Morse's Visual Examination Of The Evidence And Physical Examination Of An Exemplar Is Sufficiently Reliable To Allow Him To Testify As To His Opinions In This Matter.

Plaintiff's motion mischaracterizes and omits relevant parts of Dr. Morse's opinions.  Dr. Morse opines that based on the homeowners' testimony, they were experiencing a buildup of creosote in their chimney pipe prior to the house fire.  This build up restricted airflow and

explains why the homeowners could not get the fire in their woodstove to ignite.  This opinion is adequately substantiated by deposition testimony and the police report which state that the homeowners purchased a creosote log because they assumed the chimney pipe was blocked with creosote.[2]  His opinion is not, as Plaintiff would like you to believe, "premised on an unsupported assertion that the cleanout cap was in place."  Rather, Dr. Morse premises his opinion that the cleanout cap was in place based on: (1) the uncontroverted testimony and evidence that the woodstove was not catching; (2) Mr. Ingalls' testimony regarding his cleaning procedures; (3) the photographs of the fire damage and roof collapse, and; (4) based on his knowledge and expertise in air flow and mechanical engineering.  Dr. Morse opines,

> The possibility that the fire occurred as the result of a dislodged tee plug was considered and ruled out.  Based on Mr. Ingalls description of his cleaning procedure, he would have noticed if the plug was not in place at the base of the tee.  Thus the tee was in place at the end of the cleaning in November 2013.  *There was no mechanism by which the tee could have become dislodged over the course of the winter.*  Thus the tee plug was in place prior to the fire but became dislodged during the fire as a result of the fire damage and roof collapse.

Morse Report, at p. 20, attached hereto as **Exhibit C** (emphasis added).

Finally, Plaintiff's attempt to discredit Dr. Morse's opinion because no one observed the chimney pipe glowing red is unavailing.  The 13-foot vertical flue piping is enclosed in the wall and attic space, therefore no one could possibly have observed the glow of the pipe as it would require Mrs. Paquette and her son to have the ability to see through walls.  Britain Lencki Depo. at  59:2-10 (the stovepipe is not visible from the attic or the office), Lencki deposition excerpts attached hereto as **Exhibit D**.

---

[2] Vermont State Police Report, p. 4 ("I spoke with Britain Paquette about the fire and her observations. Paquette advised that on Monday 2/24/14 she and her husband, Joseph Paquette, had noticed the wood stove did not seem to be producing as much heat as normal. Paquette advised on 2/27/14 her husband called to have the chimney cleaned. Paquette advised her husband was not able to reach their chimney service provided. Paquette advised her husband had purchases a creosote log and brought it home to use in the wood stove."); Lencki Depo., at 61:1-7 ("the woodstove was smoking, it wasn't firing. So [Joseph Paquette] thought the creosote log would solve the problem, until we could get Alton [Ingalls] in there.").

B. <u>A+ Chimney's Real Property Appraiser Mark Lareau</u>

Plaintiff concedes that Mark Lareau is a qualified professional real property appraiser. Plaintiff instead argues that Mr. Lareau's pre-fire and post-fire appraisals of the real property are unreliable and do not 'fit' the facts of this case. However, the only evidence of this unreliability is Plaintiff's own self-serving statements unsupported by expert testimony. Plaintiff claims that Mr. Lareau failed to assign a value to two 'important' selling features of homeowner's home pre-fire, but provides no expert basis for this. Plaintiff also claims that Mr. Lareau failed to consider and use other comparable property sales, inferring that he didn't have sufficient basis to choose the eight comparables he refers to in his reports.

Mark Lareau was hired to provide a professional appraisal of the homeowners' real property before and after the fire. He based his appraisal in part on eight comparable property sales in the area of Bakersfield, Vermont. Mr. Lareau identified those comparable properties using information provided in a database called the Multiple Listing Service ("MLS"). At his deposition, Plaintiff's counsel asked Mr. Lareau to recall detailed information from the MLS listings for various properties. Mr. Lareau explained that his process was to review numerous MLS listings on his computer and assess which listings were most closely comparable to the homeowners' property. He explained that since he reviewed so many listings for this case and does so regularly for other appraisals he did not recall the specific details to accurately answer all of Plaintiff's counsel's questions. After his deposition, Mr. Lareau retrieved the MLS listings for the properties he was asked about in his deposition and provided them to A+ Chimney's counsel who promptly produced the documents to Plaintiff.

Depositions are not designed to be a memory test or a game of "gotcha." The purpose of a deposition is to obtain discoverable information. F.R.C.P. 26(b), 30. The federal rules

Downs
Rachlin
Martin PLLC

7

specifically state that parties have a duty to supplement any disclosures made under Rule 26(a), i.e. expert disclosures, when they learn that in some material respect the disclosure was incomplete.  F.R.C.P. 26(e).  A+ Chimney's counsel learned at Mr. Lareau's deposition that the MLS listings were relied upon and not previously disclosed and subsequently made a supplemental disclosure.  The timing of this supplemental disclosure was made at least 30 days before trial, in accordance with the Rules.[3]  F.R.C.P. 26(a)(3)(B).

Mr. Lareau's pre-fire appraisal report compares the homeowners' property to four other comparable property sales in Bakersfield, Vermont.  Mr. Lareau lists the property features of the homeowners' property and adjusts the comparable property sale prices depending on whether the comparable property has that feature or not.  For example, Mr. Lareau identified that the homeowners' large deck and hearth around their woodstove added value to the property, and if a comparable property did not have these features he added a dollar amount to the comparable property's sale price to come up with an "adjusted sale price."  Mr. Lareau relied on his personal experience, training, and education to make these adjustment.  The decision to include or exclude certain features is well within Mr. Lareau's expert discretion and supported by his testimony.

Plaintiff also claims that the post-fire appraisal is unreliable because he used a conservative assessment of the value of the intact foundation; an assessment that increases the damages that Plaintiff may be entitled to.  Mr. Lareau clearly explains the assumptions he made and his basis for the decision to assign a specific value to the foundation.  Mr. Lareau assessed the foundation at $20,000 explaining that there are variables in assessing the value of an existing foundation and that in this case he assigned a conservative estimate.  Significantly, he did this

---

[3] A+ Chimney's counsel provided the information to Plaintiff's counsel via an email dated February 8, 2017.  A+ Chimney later served via U.S. mail a signed copy of its supplemental disclosure on March 17, 2017 and filed a discovery certificate on March 21, 2017.  All forms of disclosure were provided more than 30 days before trial, as a trial date has not yet been scheduled.

because if this number were to be higher (less conservative) it would reduce the amount Plaintiff is entitled to under Vermont law. Plaintiff is entitled to the diminution in value, thus if the "after fire" value of the real property were higher Plaintiff would be entitled to less damages.

Plaintiff argues that Mr. Lareau's appraisal of the property pre-fire is lower than other previous appraisals of the property and the amount the homeowner's purchased the property for. Mr. Lareau didn't want to review the other appraisals before making his own independent determination as to the appraised value. Further, the value pre-fire of the property is lower than at the time of purchase due to fact that property values after 2008 dropped.

Plaintiff argues that Mr. Lareau did not assign any value to the debris removal. This is correct, A+ Chimney does not dispute that there is a cost associated with debris removal, Mr. Lareau's appraisal of the post-fire property assumes that this was already done. Plaintiff's assessment of the cost of debris removal is not disputed.

Finally, Plaintiff argues that Mr. Lareau's diminution in value assessment is irrelevant. This is incorrect. The Vermont Supreme Court held, in the context of tort damage to real property, that "[O]ur touchstone for determining damages, in tort as in contract, is reasonableness." *Langlois v. Town of Proctor*, 2014 VT 130, ¶ 43. Part of this reasonableness inquiry is the "proportionality of cost-or repair damages relative to the value of the property prior to a tort injury." *Id*. When a car is damaged in a collision and the cost to restore the car to its pre-loss condition well-exceeds the fair market value of the car prior to the loss the car is considered a total loss. In this case, the pre-fire assessed fair market value of all of the real property in this case, i.e. the home, the land, and the improvements, is significantly less than the cost to repair the structure itself. Thus, the home was a total loss and the only appropriate and just measure of damages is the diminution in value. Plaintiff, an insurance company, sold its

insureds a Replacement Cost policy, and received premiums from plaintiffs (and other homeowners) in exchange for accepting this risk. Plaintiff has paid its insureds for the replacement value of their destroyed home, pursuant to its contract. Defendant A+ Chimney has no such contractual obligation, and certainly received no consideration for this enhanced risk. Therefore the common law governing damages applies.

### C. A+ Chimney's Personal Property Appraiser Thomas Hirchak

Mr. Hirchak was hired to determine the fair market value of the homeowners personal property, the proper measure of damages in a negligence case, however, he was unable to do so in a reliable manner given the lack of information provided by Plaintiffs. Plaintiffs have the burden to prove damages to a reasonable degree of certainty. Plaintiff failed to do this and Mr. Hirchak will be called to testify to his opinion of Plaintiff's unreliable methods **if** Mr. Gomez is allowed to testify.

The proper jury instruction "with respect to the value of the lost personal property… [ ] 'is the amount of loss of fair market value; that is, the property's fair market value before the injury less the fair market value after the injury, if any.'" *Concord General Mutual Ins. Co. et al. v. Gritman et al.*, 2016 VT 45, ¶ 23. Mr. Hirchak will testify that the actual cash value method is a wholly different measure of damages than the fair market value.

### III. CONCLUSION

For the foregoing reasons, Defendant A+ Chimney Service, LLC respectfully requests that this Court DENY Plaintiff's motion exclude all of Defendant's experts from testifying at trial.

Dated at Burlington, Vermont on this 27th day of March, 2017.

DOWNS RACHLIN MARTIN PLLC

By */s/ Samantha Lednicky*
Marc Heath
Samantha V. Lednicky
199 Main Street
P.O. Box 190
Burlington, VT 05402-0190
Telephone: 802-863-2375
Fax: 802-862-7512

ATTORNEYS FOR DEFENDANT A+ CHIMNEY SERVICE, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2017, I electronically filed with the Clerk of the Court Defendant's Opposition to Plaintiff's Motion to Exclude Defendant's Experts using CM/ECF system. The CM/ECF system will provide service of such filings via Notice of Electronic Filing to the parties of record.

DOWNS RACHLIN MARTIN PLLC

By */s/ Samantha Lednicky*
Samantha V. Lednicky
199 Main Street
P.O. Box 190
Burlington, VT 05402-0190
Telephone: 802-863-2375
Fax: 802-862-7512

ATTORNEYS FOR DEFENDANT A+ CHIMNEY SERVICE, LLC

17327466.1